1  EDMUND G. BROWN JR.
   Attorney General of California
2  TYLER B. PON
   Supervising Deputy Attorney General
3  JEFFREY R. VINCENT
   Deputy Attorney General
4  State Bar No. 161013
     1515 Clay Street, 20th Floor
5    P.O. Box 70550
     Oakland, CA  94612-0550
6    Telephone:  (510) 622-2127
     Fax:  (510) 622-2270
7    E-mail:  Jeffrey.Vincent@doj.ca.gov
   *Attorneys for Defendants State of California by and*
8  *through the California Highway Patrol, Officer B.*
   *Rioux and Officer A. Voorhees*

9

10                SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                    NORTHERN DISTRICT OF CALIFORNIA

12

13

14

   **SANDRA FEE,**                          08-CV-01549-RMW

15
                                Plaintiff,
16
             v.                            **MEMORANDUM OF POINTS AND**
17                                         **AUTHORITIES IN SUPPORT OF**
                                           **MOTION FOR SUMMARY**
18  **STATE OF CALIFORNIA, et al.,**        **ADJUDICATION OF ISSUES AND**
                                           **CAUSES OF ACTION**
19                             Defendants.
                                           Hearing:     August 21, 2009
20                                         Time:        9:00 A.M.
                                           Dept:        6
21                                         Judge        The Hon. Ronald M. Whyte

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. Introduction ........................................................................................................... 1

II. Facts Relevant To Motion. ..................................................................................... 2

III. Argument. .............................................................................................................. 4

    A. Standards For Granting Summary Adjudication Of Issues. ........................ 4

    B. Officers Rioux And Voorhees Had Probable Cause To Arrest Ms. Fee. ................................................................................................................ 4

    C. Officers Rioux And Voorhees Did Not Need A Warrant To Arrest Ms. Fee At The Threshold Of Her Home ..................................................... 7

    D. Officers Rioux And Voorhees Are Entitled To Qualified Immunity From Plaintiff's Claim That Her Civil Rights Were Violated By The Warrantless Arrest At The Threshold Of Her Home. .......................... 9

IV. Conclusion ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Act Up!/Portland v. Bagley*
    988 F.2d 868 (9th Cir. 1993).......................................................................... 10, 11

*Anderson v. Creighton*
    483 U.S. 635 (1987) ........................................................................... 9, 10, 11, 12

*Anderson v. Liberty Lobby, Inc.*
    (1986) 477 U.S. 242 .................................................................................................... 4

*Aydin Corp. v. Loral Corp.*
    (9th Cir. 1983) 718 F2d 897.......................................................................................... 4

*Backlund v. Barnhart*
    778 F.2d 1386 (9th Cir. 1985)............................................................................. 12

*Blankenhorn v. City of Orange*
    485 F.3d 463 (9th Cir. 2007)................................................................................. 5

*Brosseau v. Haugen*
    543 U.S. 194, 125 S.Ct. 596 (2004) ................................................................... 10

*Burrell v. McIlroy*
    423 F.3d at 1121, 1124(9th Cir. 2005)................................................................ 11

*Celotex Corp. v. Catrett*
    (1986) 477 U.S. 317 ...................................................................................................... 4

*Devenpeck v. Alford*
    543 U.S. 146, 125 S.Ct. 588 (2004) ................................................................. 5, 6

*Dubner v. City and County of San Francisco*
    266 F.3d 959 (9th Cir. 2001)................................................................................... 5

*Elder v. Holloway*
    975 F.2d 1388 (9th Cir. 1991)............................................................................... 10

*Gilker v. Baker*
    576 F.2d 245 (9th Cir. 1978)................................................................................... 5

*Hamline v. Wright*
    2008 WL 2696920 (W.D. Mich.).......................................................................... 14

ii

1

2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3

4

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982) ............................................................................ 9

5

*Hart v. Parks*
    450 F.3d 1059 (9th Cir. 2006) ........................................................... 5

6

7

*Hunter v. Bryant*
    112 S.Ct. 534 (1991) ....................................................... 9, 10, 11, 12

8

9

*Illinois v. Gates*
    462 U.S. 214 (1983) .......................................................................... 5

10

*Malley v. Briggs*
    475 U.S. 335 (1986) ............................................................. 9, 10, 12

11

12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
    (1986) 475 U.S. 574 ........................................................................ 4

13

14

*McGlish v. Nugent*
    483 F.3d 1231 ............................................................................ 13, 14

15

*Mitchell v. Forsyth*
    472 U.S. 511 (1985) ........................................................................ 10

16

17

*Motley v. Parks*
    432 F.3d 1072 (9th Cir. 2005) ........................................................... 5

18

19

*Payton v. New York*
    445 U.S. 573 (1980) ................................................................... 7, 13

20

*Pearson v. Callahan*
    __ U.S. __, 129 S.Ct. 808 (2009) ............................................. 11, 12

21

22

*Pierson v. Ray*
    386 U.S. 547 (1967) .......................................................................... 5

23

24

*Saucier v. Katz*
    533 U.S. 194, 121 S.Ct. 2151 (2001) ...................................... 10, 11, 12

25

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*
    70 F.3d 1095 (9th Cir. 1995) ........................................................... 12

26

27

*Tatum v. City and County of San Francisco*
    441 F.3d 1090 (9th Cir. 2006) ........................................................... 6

28

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*United States v. Carrion*
  809 F.2d 1120 (5th Cir. 1987)................................................................................ 8

*United States v. Crapser*
  472 F.3d 1141 (9th Cir. 2007)............................................................................. 8, 9

*United States v. Garcia*
  997 F.2d 1273 (9th Cir.1993)................................................................................ 8

*United States v. Gori*
  230 F.3d 44 (2nd Cir. 2000)............................................................................. 8, 14

*United States v. Hammett*
  236 F.3d 1054 (9th Cir. 2001)............................................................................ 8, 9

*United States v. Jensen*
  425 F.3d 698 (9th Cir. 2005)................................................................................ 4

*United States v. Potter*
  895 F.2d 1231 (9th Cir. 1990).............................................................................. 5

*United States v. Quaempts*
  411 F.3d 1046 (9th Cir.2005).............................................................................. 14

*United States v. Santana*
  427 U.S. 38 (1976).................................................................................... 7, 8, 9, 12

*United States v. United States District Court*
  407 U.S. 297 (1972)........................................................................................... 7

*United States v. Vaneaton*
  49 F.3d 1423 (1995), cert. denied,516 U.S. 1176 (1996) .............................. passim

*Whren v. United States*
  517 U.S. 806, 116 S.Ct. 1769 (1996) .................................................................. 5

**STATUTES**

42 U.S.C.
  § 1983............................................................................................................. 1, 5, 9

Cal. Penal Code
  § 148(a)(1)......................................................................................................... 1
  § 469d................................................................................................................. 1
  § 487................................................................................................................... 6
  § 496d................................................................................................................. 6

iv

**TABLE OF AUTHORITIES**
(continued)

**Page**

California Civil Code
     § 52.1 ................................................................................................................................ 1
     § 52.3 ................................................................................................................................ 1

California Vehicle Code
     § 10851 ............................................................................................................................. 6

**COURT RULES**

Fed. R. Civ. P., Rule 56(c) .................................................................................................... 4

Motion for Summary Adjudication  Memorandum of Points and Authorities (08-CV-01549-RMW))

## I.   INTRODUCTION

In this lawsuit plaintiff Sandra Fee seeks to recover monetary damages based on a theory that her civil rights were violated when she was arrested on May 3, 2007.  On that date, Officers Rioux and Voorhees were assigned to the investigation and recovery of a stolen trailer.  The stolen trailer was parked in the driveway of Ms. Fee's home.  The officers met with the legal owner of the trailer who positively identified the trailer.  Officer Rioux approached the door of the residence in order to question the resident regarding the stolen trailer (sometimes referred to as a knock and talk). He initially knocked at the gate/door in the fence on the left side of the garage but did not receive any response.  He then went through an unlocked gate to the right of the garage and approached a door.  Plaintiff claims that the door where Officer Rioux made contact with her is the "back door" of her home.  Officer Rioux knocked on the door and Ms. Fee opened the door.  After initially answering a question, Ms. Fee refused to answer questions stating that she was on the phone and attempted to close the door.  Officer Rioux sought to detain Ms. Fee in order to continue questioning her regarding the stolen trailer that was parked in her driveway.  Officer Rioux grasped Ms. Fee's wrist in an effort to detain her at the door.  As Ms. Fee continued to struggle in an attempt to evade detention or arrest, Officer Rioux used pepper spray.  After the pepper spray was used, Ms. Fee stopped struggling and was placed under arrest for receiving a stolen trailer (Cal. Penal Code § 469d) and obstruction of a peace officer in the performance of his duties (Cal. Penal Code § 148(a)(1).

Plaintiff's complaint contains six causes of action: (1) violation of civil rights - 42 U.S.C. § 1983, (2) violation of civil rights - California Civil Code §§ 52.1 and 52.3, (3) assault, (4) battery, (5) false imprisonment, and (6) trespass.  The first and second causes of action are based in part, and the fifth cause of action is based entirely, upon plaintiff's theory that she was unlawfully arrested.  This motion will establish that defendant officers had probable cause to arrest plaintiff and her arrest at the threshold of her home following her opening of the door was proper under established legal precedents.  Even if the law is not clearly established that an officer may arrest a felony suspect at the threshold of a "back door," there is also no precedent which clearly establishes that a threshold arrest at the "back door" is a violation of civil rights.  Accordingly,

1

1    Officers Rioux and Voorhees are entitled to qualified immunity for their actions in arresting

2    plaintiff at her back door.

3    **II.    FACTS RELEVANT TO MOTION.**

4         On the morning of May 3, 2007, Officers Rioux and Voorhees were on patrol in Santa Cruz

5    county.  Declaration of Officer Rioux, ¶ 3.  At about 8:39 a.m., they received a call from CHP

6    dispatch to proceed to 1200 Graham Hill Road to recover a stolen trailer.  Rioux Dec ¶ 4.

7    Kenneth Pollastrini met the officers in front of 1200 Graham Hill Road and identified himself as

8    the registered owner of the trailer that was parked in the driveway at that location.  Rioux Dec

9    ¶ 5.  Mr. Pollastrini had reported the trailer as stolen to the Santa Cruz Police Department on

10   April 28, 2007.  Rioux Dec ¶ 5.  Mr. Pollastrini positively identified the trailer as his based on a

11   physical description and the Vehicle Identification Number ("VIN.")  Rioux Dec ¶ 5. In order to

12   investigate the theft of the trailer, Officers Rioux and Voorhees sought to contact the resident of

13   the home at 1200 Graham Hill Road where the trailer was parked.  Rioux Dec ¶ 6.

14        1200 Graham Hill Road contains a house with an attached 2 car-garage.  Rioux Dec ¶ 7;

15   Deposition of Sandra Fee 105:24-110:11, 133:23-135:5 and Exhibits 16, 17, 18 and 20 thereto.

16   The property has about 150 feet frontage on Graham Hill Road.  Rioux Dec ¶ 8; Fee Depo.

17   105:24-110:11, 133:23-135:5 and Exhibits 16, 17, 18 and 20 thereto. The Garage is set back 25

18   feet from the road and fences extend from each side of the garage to the adjoining property lines.

19   Rioux Dec ¶ 8; Fee Depo. Exhibits 16, 17, 18 and 20.  The area between the fences/garage and

20   the road is concrete and asphalt.  Rioux Dec ¶ 8; Fee Depo. Exhibits 16, 17, 18 and 20.  The

21   stolen trailer was parked parallel to the road to the left of the garage.  Rioux Dec ¶ 9; Fee Depo.

22   133:23-135:5 and Exhibit 20 thereto. The fence to the left of the garage has a gate fashioned from

23   a door.  Rioux Dec ¶ 10; Fee Depo. 105:24-110:11, 133:23-135:5 and Exhibits 16, 17, 18 and 20

24   thereto.  The fence to the right of the garage has a gate made from the same materials as the

25   fence.  Rioux Dec ¶ 10; Fee Depo. 105:24-110:11, 133:23-135:5 and Exhibits 16, 17, 18 and 20

26   thereto.  On May 3, 2007, the door-gate to the left of the garage was locked.  Rioux Dec ¶ 10; Fee

27   Depo. 106:16-107:18, 108:21-109:7 and Exhibits 17 and 20 thereto. The gate to the right of the

28   garage was unlocked.  Rioux Dec ¶ 10; Fee Depo 107:19-108:15.  Officers Rioux and Voorhees

2

went through the unlocked gate to contact the resident of the home in order to investigate the theft of the stolen trailer.  Rioux Dec ¶ 11.

Officer Rioux approached the door to the house and knocked loudly.  Rioux Dec ¶ 12; Fee Depo. 89:9-24.  The door where officer Rioux knocked is glass panels, so for safety officer Rioux stood to the side of the door.  Rioux Dec ¶ 12; Fee Depo. 89:11-14, 104:11-105:13, 143:15-23 and Exhibit 15 thereto.  Officer Rioux knocked several times.  Rioux Dec ¶ 12; Fee Depo. 89:9-24.  After the third time, Sandra Fee opened the door.  Rioux Dec ¶ 12;  Fee Depo. 89:9-24, 142:15-143:11.  Officer Rioux asked Ms. Fee if she lived there and she said "yes."  Rioux Dec ¶ 13.  Ms. Fee also stated that her son lived there with her.  Rioux Dec ¶ 13.  Officer Rioux asked Ms. Fee if she knew anything about the trailer in front of her house.  Rioux Dec ¶ 13; Fee Depo. 93:11-23. According to Officer Rioux and Officer Voorhees, Ms. Fee stated that she didn't know anything about the trailer.  Rioux Dec ¶ 13.  Ms. Fee testified that she told Officer Rioux that the trailer belonged to her son.  Fee Depo. 93:11-23.  Officer Rioux informed Ms. Fee that the trailer was stolen and he needed to ask her questions regarding the trailer.  Rioux Dec ¶ 13; Fee Depo. 93:19-94:14.  Ms. Fee attempted to close the door.  Rioux Dec ¶ 13.  Officer Rioux blocked the door and instructed Ms. Fee to step outside so that he could ask her questions about the trailer.  Rioux Dec ¶ 13; Fee Depo. 94:8-14.  Ms. Fee refused stating that she was on the telephone and would not talk to Officer Rioux until she finished her call.  Rioux Dec ¶ 13; Fee Depo.  93:19-23.  Ms. Fee has admitted that she refused to speak to Officer Rioux until she finished her phone call.  Fee Depo 93:19-23, 147:10-148:13.  Officer Rioux grasped Ms. Fee's right arm and again told her to come outside.  Rioux Dec ¶ 14; Fee Depo. 94:10-17.  Ms. Fee tried to pull her arm from Officer Rioux's grasp as he pulled her from the doorway and told her she was resisting and should stop resisting.  Rioux Dec ¶ 14; Fee Depo. 96:16-24.  Ms. Fee, however, continued to try to pull away from Officer Rioux's grasp while flailing her arms.  Rioux Dec ¶ 14. Concerned that his efforts to use physical force to control Ms. Fee might cause injury, Officer Rioux took out his can of Oleoresin Capsicum (pepper) spray and again told Ms. Fee to stop resisting.  Rioux Dec ¶ 14.  Ms. Fee continued to struggle against Officer Rioux, so he sprayed her in the face with pepper spray and Ms. Fee immediately stopped resisting.  Rioux Dec ¶ 14. Officer Rioux then

1   handcuffed Ms. Fee and led her to the patrol car where he rinsed her face with water from a

2   canteen.  Rioux Dec ¶ 14.

3   **III.   ARGUMENT.**

4   **A.   Standards for Granting Summary Adjudication of Issues.**

5   In seeking summary judgment the moving party must establish that no genuine issue of

6   material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R.

7   Civ. P., Rule 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could

8   return a verdict for the opposing party.  *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242.  A

9   fact is "material" if it affects the right to recover under applicable substantive law.  *Id.*  The

10   moving party must submit evidence that establishes issues upon which the movant bears the

11   burden of proof; if the movant does not bear the burden of proof on an issue, the movant need

12   only point to the absence of evidence to support the opponent's burden.  *Celotex Corp. v. Catrett*

13   (1986) 477 U.S. 317, 324.  The opposition evidence must be such that it could cause reasonable

14   persons to disagree on whether the facts claimed by the moving party are true ... 'enough to

15   require a jury or judge to resolve the parties' differing versions of the truth.' *Aydin Corp. v. Loral*

16   *Corp.* (9th Cir. 1983) 718 F2d 897, 902.  To avoid summary judgment on an issue upon which the

17   opponent bears the burden of proof, the opponent must present affirmative evidence sufficiently

18   probative such that a jury reasonably could decide the issue in favor of the opponent.  *Matsushita*

19   *Elec. Indus. Co. v. Zenith Radio Corp.* (1986) 475 U.S. 574, 588.  When the conduct alleged is

20   implausible, stronger evidence than otherwise required must be presented to defeat summary

21   judgment.  *Id.* at 587.

22   In this case, plaintiff bears the burden of proof to produce evidence supporting each

23   element of her claim for damages.  In a false arrest case, plaintiff must prove that the arresting

24   officer lacked probable cause or that the arrest, in some other specific manner, violated her rights

25   under the Fourth Amendment under the particular circumstances of the case.

26   **B.   Officers Rioux and Voorhees Had Probable Cause to Arrest Ms. Fee.**

27   The Fourth Amendment requires that a law enforcement officer have probable cause to

28   arrest an individual without a warrant.  *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir.

4

2005).  "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth

Amendment provided that the arrest was made without probable cause or other justification."

*Dubner v. City and County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001).  Probable cause

exists when "the facts and circumstances within [the officers'] knowledge and of which they had

**reasonably trustworthy information** were sufficient to warrant a prudent man in believing that

the [plaintiff] had committed or was committing an offense."  *Hart v. Parks*, 450 F.3d 1059,

1065-66 (9th Cir. 2006) (emphasis added, internal quotation marks omitted).  "Police must only

show that, under the totality of the circumstances, a prudent person would have concluded that

there was a **fair probability** that [the suspect] had committed a crime."  *Id.* at 1066 (emphasis

added, internal quotation marks omitted); accord *Blankenhorn v. City of Orange*, 485 F.3d 463,

471 (9th Cir. 2007).  Moreover, probable cause may be based on the collective knowledge of all

the officers involved in an investigation and all the reasonable inferences that may be drawn

therefrom. See *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005) (noting that officers are

entitled to rely on the observations and knowledge obtained by fellow officers).  The existence of

probable cause negates a section 1983 claim based on false arrest and the legality of the arrest is

not affected by the subsequent dismissal or acquittal of the charges.  *Pierson v. Ray*, 386 U.S.

547, 555 (1967).

   "Probable cause requires only a probability or substantial chance of criminal activity, not an

actual showing of such activity."  *Illinois v. Gates*, 462 U.S. 214, 244 n. 13 (1983). The standard

is not one of absolute certainty, but of **"fair probability"** that the suspect was involved in

criminal behavior.  *United States v. Potter*, 895 F.2d 1231, 1233 (9th Cir. 1990). As a civil

litigant, plaintiff bears the burden of proving the absence of probable cause. *Gilker v. Baker*, 576

F.2d 245 (9th Cir. 1978).  In a § 1983 action, only the objective conduct of the officer is relevant;

the officer's subjective intent is disregarded.  *Whren v. United States*, 517 U.S. 806, 814, 116

S.Ct. 1769 (1996).  As the determination of probable cause to arrest is based on objective factors,

the Supreme Court has held that it is irrelevant what crime a person is charged with so long as

there is probable cause to suspect that some crime has been committed.  *Devenpeck v. Alford*, 543

U.S. 146, 152-156, 125 S.Ct. 588, 593-595 (2004) (" [The] subjective reason for making the

5

1  arrest need not be the criminal offense as to which the known facts provide probable cause."); *See*

2  *also*, *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006) ("Under

3  *Devenpeck*, the subjective reason that Officer Smith arrested Fullard is irrelevant so long as the

4  available facts suggested that Fullard was committing a crime.").

5        Here, Officers Rioux and Voorhees had probable cause to arrest Ms. Fee.  California

6  Vehicle Code section 10851 provides:

7        (a) Any person who drives or takes a vehicle not his or her own, without the consent
of the owner thereof, and with intent either to permanently or temporarily deprive the
8  owner thereof of his or her title to or possession of the vehicle, whether with or
without intent to steal the vehicle, or any person who is a party or an accessory to or
9  an accomplice in the driving or unauthorized taking or stealing, is guilty of a public
offense and, upon conviction thereof, shall be punished by imprisonment in a county
10  jail for not more than one year or in the state prison or by a fine of not more than five
thousand dollars ($5,000), or by both the fine and imprisonment.

11

12        The officers had a reliable report from a crime victim who positively identified his stolen

13  trailer.  The stolen property was parked in the driveway of the home where Ms. Fee resided.

14  Even if Ms. Fee's testimony that she stated that the trailer belonged to her son (a statement the

15  officers knew to be  false) is accepted, under section 10851, there is still probable cause to arrest

16  her.  Under section 10851, an accomplice to even the temporary taking of a vehicle can be

17  punished as a felon.  Her description of the stolen trailer as belonging to her son, being false,

18  indicates that there is a **fair probability** of her role in the taking of the trailer.

19        California Penal Code section 487 defines the felony of "grand theft" to include the taking

20  of any personal property "of a value exceeding four hundred dollars."  Here, it was apparent that

21  the stolen trailer had a value of in excess of $400.00.  Rioux Dec. ¶ 5.  Ms. Fee's possession of

22  the trailer – it being parked in her driveway, created a **"fair probability"** of her role in taking the

23  trailer.  Plaintiff's own expert on law enforcement also conclude that there was probable cause to

24  arrest plaintiff.  Deposition of Don Cameron, Exhibit M, 28:11-29:23.

25        Under California Penal Code section 496d, it is a felony to receive or aid in the

26  concealment or withholding of a trailer, with knowledge that the trailer is stolen.  Here, Ms. Fee

27  had the stolen trailer parked in her driveway.  Although she claims she informed the officers, that

28  the trailer belonged to her son, her possession of the trailer combined with the officers'

6

1  knowledge that her explanation was false, created probable cause to believe that she had received

2  or withheld the trailer with knowledge of its being stolen.  As there was probable cause to arrest

3  plaintiff for a felony, the officers did not need a warrant to arrest her at her open doorway.

**C.      Officers Rioux and Voorhees did not need a warrant to arrest Ms. Fee at the threshold of her home**

6          The Fourth Amendment to the United States' Constitution protects the "right of the people

7  to be secure in their persons, houses, papers and effects, against unreasonable searches and

8  seizures."  Physical entry into the home is the "chief evil against which the wording of the Fourth

9  Amendment is directed." *United States v. United States District Court*, 407 U.S. 297, 313, (1972).

10  The Fourth Amendment prohibits police from making a nonconsensual ***entry*** into a suspect's

11  home in order to effect a warrantless arrest. *See Payton v. New York*, 445 U.S. 573, 576 (1980).

12  However, the Supreme Court has upheld the warrantless arrest of a defendant who was standing

13  in the frame of her doorway because she had voluntarily exposed herself to public view.  *United*

14  *States v. Santana*, 427 U.S. 38, 42 (1976). Likewise, the Ninth Circuit has held that a warrantless

15  arrest is proper when a suspect voluntarily opens the door of his dwelling in response to a

16  noncoercive knock by the police. *See United States v. Vaneaton*, 49 F.3d 1423, 1426 (1995), cert.

17  denied,516 U.S. 1176 (1996).

18          In *Vaneaton*, the court summarized the issue as follows:

19          The issue Vaneaton raises is whether the police, acting with probable cause but
            without a warrant and while standing outside his motel room, could lawfully arrest
20          him while he was standing immediately inside the open doorway. Relying on *Payton*
            *v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and denying the
21          existence of exigent circumstances, Vaneaton claims the answer is clear: The
            arresting officers were required to have had a warrant.
22

23  *Vaneaton*, 49 F.3d at 1425.  This is the same issue presented here where Officer Rioux detained

24  and arrested Ms. Fee as she stood in her open doorway.  However, in *Vaneaton*, the Ninth Circuit

25  held that "by opening the door as he did, Vaneaton exposed himself in a public place. His

26  warrantless arrest, therefore, does not offend the Fourth Amendment."  *Id.* at 1427.

27          Knocking on a door to attempt to contact a person inside is a common event and
            hardly a hallmark of a police state, and indeed, under these facts the zone of privacy
28

1          sought by *Payton* [445 U.S. 573] to be protected is not implicated. Accordingly, we
       hold that *Payton* was not violated, and that Vaneaton's arrest was proper.

2

3   *Id. Vaneaton* follows established Ninth Circuit authority and the United States Supreme Court's

4   decision in *Santana, supra*, 427 U.S. 38:

5          In *Whitten* [*United States v. Whitten*, 706 F.2d 1000, 1015-17 (9th Cir.1983)], we
       held that Gaiefsky's arrest while standing in the doorway of his hotel room did not

6          violate *Payton* because "[a] doorway ..., unlike the interior of a hotel room, is a public
       place." 706 F.2d at 1015. As authority for this proposition, we relied on *United*

7          *States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

8   *Vaneaton*, 49 F.3d at 1426. In *Vaneaton*, the Ninth Circuit specifically rejected the notion that

9   reasonableness of the arrest could be decided "on the basis of whether Vaneaton was standing

10  inside or outside the threshold of his room." *Id.*

11         The Ninth Circuit has extended *Vaneaton* to seizures amounting to detentions rather than

12  arrests (i.e., *Terry*-stops) occurring at the open door of a residence.

13         [W]e now hold that when a suspect voluntarily opens the door of his residence in
       response to a non-coercive 'knock and talk' request, the police may temporarily seize

14         the suspect outside the home (or at the threshold) provided that they have reasonable
       suspicion of criminal activity.

15

16         *United States v. Crapser*, 472 F.3d 1141, 1148 (9th Cir. 2007). Other circuits also follow

17  *Santana* and *Vaneaton* in recognizing that an arrest or detention of an individual at an open door,

18  without a warrant, does not violate the Fourth Amendment. See *United States v. Carrion*, 809

19  F.2d 1120, 1128 (5th Cir. 1987); *United States v. Gori*, 230 F.3d 44, 53 (2nd Cir. 2000).

20         The fact that plaintiff's arrest here occurred at what she characterizes as her "back door" is

21  not a relevant distinction. It is well established that: "Law enforcement officers may encroach

22  upon the curtilage of a home for the purpose of asking questions of the occupants." *United States*

23  *v. Hammett*, 236 F.3d 1054, 1059 (9th Cir. 2001).

24         [t]his circuit and other circuits have [ ] recognized that officers must sometimes move
       away from the front door when they are attempting to contact the occupants of a

25         residence. Generally, the subsequent discovery of evidence in plain view does not
       violate the Fourth Amendment.

26

27  *Id*. at 1060 citing *United States v. Garcia*, 997 F.2d 1273, 1279 (9th Cir.1993).

28

8

1

2

3

> We bolstered our holding in Garcia by noting the First Circuit case of *United States v. Daoust*, 916 F.2d 757 (1st Cir.1990), in which the court held that if the front door is inaccessible, "there is nothing unlawful or unreasonable about going to the back of the house to look for another door, all as part of a legitimate attempt to interview a person." *Id*. at 758.

4

*Hammett*, 236 F.3d at 1060.  Officer Rioux had reached the "back door" through a gate that had

5

been left unlocked specifically to allow persons access to the area around the "back door."  Rioux

6

Dec. ¶ 10; Fee Depo. 107:19-108:15.  The reason for the application of this rule here is clear.

7

Plaintiff approached her "back door," observed officer Rioux in his distinctive California

8

Highway Patrol uniform, recognized him as such and voluntarily opened her door to speak to

9

him. Fee Depo. 89:9-24, 142:15-143:11.  As with *Vaneaton* and *Crasper*, the expectation of

10

privacy ends when the door is opened in response to a non-coercive knock. *Vaneaton*, 49 F.3d at

11

1426-1427; Crasper, 472 F.3d at 1148.  Whether the door is at the front, the side or back of the

12

house, the person opening the door has chosen to expose herself to whoever is on the other side of

13

the door.  "She was not merely visible to the public but was as exposed to public view, speech,

14

hearing, and **touch** as if she had been standing completely outside her house." *Santana, supra*,

15

427 U.S. at 42, emphasis added.  "He voluntarily exposed himself to warrantless arrest by freely

16

opening the door of his motel room to the police." *Vaneaton*, 49 F.3d at 1426.  Here, Ms. Fee,

17

with a stolen trailer parked in her driveway, heard the knock on her door, observed and

18

recognized Officer Rioux as a California Highway Patrol Officer.  She voluntarily opened her

19

door and spoke to Officer Rioux.  Accordingly, her arrest at the open doorway did not violate the

20

Fourth Amendment.

21

22

     **D.**    **Officers Rioux and Voorhees are Entitled To Qualified Immunity from Plaintiff's Claim That Her Civil Rights Were Violated by the Warrantless Arrest at the Threshold of Her Home.**

23

24

     Law enforcement officers are entitled to assert a defense of qualified or "good faith"

25

immunity from section 1983 liability if they reasonably, although mistakenly, believed that their

26

actions were constitutional. *Hunter v. Bryant*, 112 S.Ct. 534 (1991); *Anderson v. Creighton*, 483

27

U.S. 635, 641 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding qualified immunity

28

protects "all but the plainly incompetent or those who knowingly violate the law"); *Harlow v.*

9

1  *Fitzgerald*, 457 U.S. 800, 818 (1982) (holding state officer protected from liability if "conduct

2  does not violate clearly established statutory or constitutional rights of which a reasonable person

3  would have known").

4      Qualified immunity shields an officer from liability when he makes a decision that, even if

5  constitutionally deficient, reasonably misapprehends the law governing the circumstances he

6  confronted. *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151 (2001), (qualified immunity

7  operates "to protect officers from the sometimes 'hazy border between excessive and acceptable

8  force'"). As the Supreme Court more recently stated:

9      Because the focus is on whether the officer had fair notice that her conduct was
       unlawful, reasonableness is judged against the backdrop of the law at the time of the
10     conduct. If the law at that time did not clearly establish that the officer's conduct
       would violate the Constitution, the officer should not be subject to liability or, indeed,
11     even the burdens of litigation.

12  *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596 (2004).

13      The question of whether a reasonable officer could have believed that the defendant

14  officers' conduct was proper under established law is generally a question of law for the trial

15  court that should ordinarily be determined at the earliest possible point in the litigation. *Hunter v.*

16  *Bryant*, 112 S.Ct. at 536; *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-873 (9th Cir. 1993).

17      In order to defeat a defense of qualified immunity, a plaintiff must show that the officer's

18  actions violated "clearly established" law at the time the actions were taken. *Malley v. Briggs*,

19  475 U.S. at 345; *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985); *Anderson v. Creighton* 483 U.S.

20  at 640. In showing that the officer violated "clearly established" law, the plaintiffs must do more

21  than simply allege the violation of a generalized, abstract right (e.g., the Fourth Amendment right

22  to be free from unreasonable seizures). *Id*. at 639. They must identify the specific constitutional

23  right allegedly infringed, as defined by "clearly established" law at the time of the incident. They

24  bear the burden of identifying "the universe of statutory or decisional law from which the court

25  can determine whether the right allegedly violated was clearly established." *Elder v. Holloway*,

26  975 F.2d 1388, 1392 (9th Cir. 1991). Thus, the plaintiff must show that the **particular facts** of

27  her case support a claim of clearly established right. *Id*. at 1392-1393, emphasis added. The

28

1   inquiry "must be undertaken in light of the specific context of the case, not as a broad general

2   proposition." *Saucier, supra*, 533 U.S. at 201.

3       The Supreme Court held in *Anderson* that whether a search is "unreasonable" within the

4   meaning of the Fourth Amendment is an entirely different question from whether an officer

5   reasonably could have believed his actions to be lawful under the Fourth Amendment. *Anderson*

6   *v. Creighton*, 483 U.S. at 643-44.   The court makes two inquiries to determine whether the

7   defense of qualified immunity is applicable.  First, the court identifies the constitutional right

8   which was allegedly violated.  Second, the court determines whether the law governing the

9   official's conduct is clearly enough established to alert a reasonable officer to its constitutional

10  parameters. *Saucier v. Katz, supra*, 533 U.S. at 201; *Act Up!/Portland, supra*, 988 F.2d at 871.

11      Recently, the Supreme Court has held that lower courts may now resolve the issue of

12  qualified immunity by deciding whether the law governing the official's conduct was clearly

13  established at the time of the conduct, without first deciding whether the conduct, in fact, violated

14  plaintiff's rights.  *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 818-822 (2009). This case is

15  particularly amenable to resolution of qualified immunity without first answering the question of

16  whether plaintiff's rights were violated by her threshold arrest.  In terms of qualified immunity,

17  the relevant question is whether it was clear to a reasonably trained and knowledgeable officer on

18  May 3, 2007, that he could not reach into an open doorway to detain and arrest a felony suspect.

19  Although as stated above, it appears clear that there was no constitutional violation, any contrary

20  authority merely establishes that the law is unclear.

21      In assessing whether the law is clearly established such that an officer could not reasonably

22  believe that his conduct was lawful, "the court should ask whether the [officer] acted reasonably

23  under settled law in the circumstances, **not whether another reasonable, or more reasonable**

24  **interpretation of the events can be constructed ... after the fact.**"  *Hunter*, 502 U.S. at 228

25  (emphasis added).  "[T]he issue is whether a reasonable officer could have believed that his

26  conduct was justified.  'This is so notwithstanding that reasonable officers could disagree on that

27  issue.'"  *Burrell v McIlroy*, 423 F.3d 1121, 1124 (9th Cir. 2005).   "The qualified immunity

28  standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly

1   incompetent or those who knowingly violate the law.'"  *Hunter*, 502 U.S. at 227, quoting *Malley*

2   *v. Briggs*, 475 U.S. at 343, 341; *Anderson v. Creighton*, 483 U.S. at 638; *Sinaloa Lake Owners*

3   *Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).

4        In *Saucier v. Katz*, the Supreme Court clarified the distinction between the objectively

5   reasonable standard applicable to the excessive force claim and the reasonable mistake inquiry for

6   purposes of evaluating qualified immunity.

7        The qualified immunity inquiry, on the other hand, has a further dimension.  The
         concern of the immunity inquiry is to acknowledge that **reasonable mistakes** can be
8        made as to the legal constraints on particular police conduct.  It is sometimes difficult
         for an officer to determine how the relevant legal doctrine, here excessive force, will
9        apply to the factual situation the officer confronts.   An officer might correctly
         perceive all of the relevant facts but have a mistaken understanding as to whether a
10       particular amount of force is legal in those circumstances.  If the officer's mistake as
         to what the law requires is reasonable, however, the officer is entitled to the immunity
11       defense.

12   *Saucier*, 533 U.S. at 205.  The rationale can be applied here to whether the detention and arrest of

13   plaintiff at the open door of her home was proper.  Although it is clear that Ninth Circuit

14   precedents, following *United States v. Santana, supra*, 427 U.S. 38 establish that a law

15   enforcement officer can arrest a suspect (with probable cause) at the open door of a home, as

16   discussed above, contrary authority that exists, merely demonstrates that, at most, the law is

17   unsettled.  If the law is unsettled  an officer is entitled to immunity.

18       The principles of qualified immunity shield an officer from personal liability when an
         officer reasonably believes that his or her conduct complies with the law. Police
19       officers are entitled to rely on existing lower court cases without facing personal
         liability for their actions. In *Wilson* [*v. Layne*, 526 U.S. 603, 119 S.Ct. 1692] we
20       explained that a Circuit split on the relevant issue had developed after the events that
         gave rise to suit and concluded that "[i]f judges thus disagree on a constitutional
21       question, it is unfair to subject police to money damages for picking the losing side of
         the controversy." 526 U.S., at 618, 119 S.Ct. 1692.
22

23   *Pearson, supra*, __ U.S. __, 129 S.Ct at 823.  The plaintiff bears the burden of demonstrating the

24   constitutional right at issue was clearly established at the time of the alleged violation. See

25   *Backlund v. Barnhart*, 778 F.2d 1386, 1389 (9th Cir. 1985).

26       On April 11, 2007, three weeks before plaintiff's arrest here, the United States Court of

27   Appeals, Eleventh Circuit, published a decision with facts (according to the plaintiff there) similar

28   to those presented here:

1

2

3

4

McClish [plaintiff], in contrast, said that he had just gotten out of the shower when he heard a dog barking followed by a knock at the door.  He put on a bathrobe, went to the door, and opened it.  McClish averred that Deputy Terry was standing on the porch, directly in front of the open door, and that Terry then **reached into the house, grabbed him, and forcibly pulled him out onto the porch**. Both Holmberg [who shared the home] and McClish unambiguously stated that McClish had been standing completely inside the home at the time.

5

6

7

8

9

10

*McGlish v. Nugent*, 483 F.3d 1231, 1235-1236, emphasis added, footnotes omitted (11th Cir. 2007).  In *McGlish*, the Eleventh Circuit held that the deputy sheriff's act of reaching into McGlish's home across the threshold of the open door to arrest McGlish without a warrant violated the Fourth Amendment under the reasoning of *Payton, supra*,445 U.S. at 589-590. *McGlish*, 483 F.3d at 1241-1242.  Nevertheless, the Eleventh Circuit held that the defendant law enforcement officers were entitled to qualified immunity.

11

12

13

14

15

16

17

18

No Supreme Court, Eleventh Circuit, or Supreme Court of Florida cases have resolved the question whether *Payton* or *Santana* applies to the arrest of a person who, while standing firmly inside the house, opens the door in response to a knock from the police and is then pulled outside the unambiguous physical dimensions of the home.  However, **the law of other circuits might have permitted an arrest under facts similar to those presented here.  *See, e.g.,  United States v. Vaneaton,* 49 F.3d 1423, 1426-27 (9th Cir.1995)**;  *United States v. Carrion*, 809 F.2d 1120, 1127-28 (5th Cir.1987). These decisions from other circuits are not, of course, determinative of whether existing law in this Circuit was clearly established. Instead, they are simply further support for our conclusion: that in light of the apparent tension between Santana and Payton, we have no basis upon which to conclude that a reasonable law enforcement officer fairly would have known that the arrest alleged by McClish, **within the house yet within reach of an officer standing outside**, was unlawful.

19

20

21

22

23

*Id*. at 1249 (emphasis added).  The dissenting judge in *McGlish*, while agreeing that the deputy was entitled to immunity, heavily criticized the majority for inventing a "plane-of-the door rule" that was illogical, inconsistent with Supreme Court precedent and well reasoned decisions of other circuits.  *Id*. at 1258-1259 (in dissent).  The dissenting judge emphasized that:

24

25

26

Not only has *Santana* never been overruled or even questioned by the Supreme Court, and not only is it in harmony with the rationale of the *Payton* decision: it is also more consistent with Fourth Amendment jurisprudence in general than the majority opinion's approach. The majority opinion reads *Payton* to support a bright-line rule at the property-law plane of the opened door. But bright-line rules are generally disfavored under the Fourth Amendment's global command of "reasonableness."

27

28

13

*Id*. at 1258 (in dissent).  The dissenting opinion also agreed that in the Ninth, Second and Fifth Circuits the deputy's conduct – reaching in to detain or arrest a suspect, would not violate the Fourth Amendment.  *Id.* at 1262 (Citing *inter alia*, *United States v. Gori*, 230 F.3d 44, 52 (2d Cir.2000);  *United States v. Vaneaton*, 49 F.3d 1423, 1427 (9th Cir.1995); *United States v. Carrion*, 809 F.2d 1120, 1128 (5th Cir.1987)).

More recently, the district court for the Western District of Michigan ruled that a law enforcement officer was entitled to qualified immunity for forcibly removing a suspect from his home when he answered a knock on the door by opening the door.  *Hamline v. Wright*, 2008 WL 2696920 (W.D. Mich.) The court noted that at the time there was no Sixth Circuit Decision on point and that the officers' conduct would be permitted under the Ninth Circuit precedent *Vaneaton* but appeared contrary to Seventh Circuit authority.  The judge in *Hamline* noted that in the Ninth Circuit, a person who answers the door and appears in the doorway was subject to arrest while a person who opens the door but remains in his bed would not be subject to arrest. *Hamline*, 2008 WL 2696920 at 8-9, citing *Vaneaton, supra*, 49 F.3d at 1426-27 and *United States v. Quaempts*, 411 F.3d 1046, 1047-48 (9th Cir.2005).  In *Quaempts*, the criminal defendant lived in a small trailer home that was "so small that he could open the front door while lying in his bed." *Id*. at 1047. Police officers knocked on the door to the trailer home and defendant then opened the door while still in his bed where he was arrested. *Id*.  Here, unlike *Quaempts*, but like *Vaneaton*, Ms. Fee was standing in her doorway – not lying in her bed.

While other circuits clearly recognize that *Vaneaton* permits an officer to reach across an open doorway to detain and arrest a suspect, the facts here and those considered by the Eleventh Circuit and the Western District of Michigan – reaching across the threshold, have not specifically been addressed by the Ninth Circuit in a published decision.  The *Vaneaton* court described the facts in that case as follows:

> According to the stipulated facts, Vaneaton opened the curtains of a window, saw the officers, and opened the door. Detective Carpenter asked him if he was Jack Vaneaton, and when he said he was, he was arrested. At the moment of his arrest, Vaneaton was standing at the doorway but just inside the threshold. The arresting officer was immediately outside the threshold of the room and did not enter before advising Vaneaton he was under arrest. Vaneaton was then handcuffed, advised of his *Miranda* rights, and asked for permission to search the room.

14

1   49 F.3d at 1425.

2       Thus, in *Vaneaton*, the officers stepped across the threshold (an obviously greater intrusion

3   than reaching across) to take Mr. Vaneaton into custody after telling him he was under arrest.

4   Here, the arrest or detention occurred as Officer Rioux reached in to grasp Ms. Fee.  To the extent

5   that the facts here are different, the difference is slight.  More importantly, the differences serve to

6   highlight the unsettled nature of Ms. Fee's claim that arresting her by reaching across the "plane

7   of her door," would be a violation of her Fourth Amendment rights.  Accordingly, defendant

8   officers are entitled to qualified immunity from plaintiff's claims that her civil rights were

9   violated by a "false arrest."

10  **IV.   CONCLUSION**

11      Defendants here are entitled to summary adjudication of the issue of false arrest contained

12  in the First, Second and Fifth Causes of Action because the arrest was made based upon probable

13  cause and plaintiff was arrested at the open door of her home.  Even if the arrest might have

14  included a violation of plaintiff's Fourth Amendment rights, defendants are nevertheless entitled

15  to qualified immunity because under the circumstances, the particular right, was not clearly

16  established as a matter of law.

17  Dated:  July 14, 2009                    Respectfully Submitted,

18                                           EDMUND G. BROWN JR.
                                             Attorney General of California
19                                           TYLER B. PON
                                             Supervising Deputy Attorney General
20

21

22                                            /s/ Jeffrey R. Vincent
                                             JEFFREY R. VINCENT
23                                           Deputy Attorney General
                                             *Attorneys for Defendants*
24

25  OK2008900086
    90120099.doc

26

27

28