EDMUND G. BROWN JR.
Attorney General of California
TYLER B. PON
Supervising Deputy Attorney General
JEFFREY R. VINCENT
Deputy Attorney General
State Bar No. 161013
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 622-2127
Fax: (510) 622-2270
E-mail: Jeffrey.Vincent@doj.ca.gov
Attorneys for Defendants State of California by and through the California Highway Patrol, Officer B. Rioux and Officer A. Voorhees

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SANDRA FEE,**<br><br>Plaintiff,<br><br>**v.**<br><br>**STATE OF CALIFORNIA, et al.,**<br><br>Defendants. | 08-CV-01549-RMW<br><br>**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>(F.R.C.P. RULE 50)<br><br>Courtroom: 6<br>Judge: The Hon. Ronald M. Whyte<br>Trial Date: May 10, 2010<br>Action Filed: February 25, 2008 |

## TABLE OF CONTENTS

**Page**

I. Introduction ........ 1

II. Legal standard applicable to motion for judgment ........ 1

III. Argument ........ 2

A. Plaintiff's claims ........ 2

B. Summary of facts ........ 2

C. False detention and arrest under section 1983 ........ 3

D. Officers rioux and voorhees are entitled to qualified immunity from plaintiff's claim that her civil rights were violated by the warrantless arrest at the threshold of her home ........ 6

E. Officers rioux and voorhees are immune from liability on plaintiff's state-law claim of false arrest/false imprisonment. ........ 11

IV. Conclusion ........ 12

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Act Up!/Portland v. Bagley*
988 F.2d 868 (9th Cir. 1993)........................................ 7, 8

*Anderson v. Creighton*
483 U.S. 635 (1987)........................................ 6, 7, 8

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)........................................ 2, 7

*Anderson v. Long Beach City*
81 Fed.Appx. 703 (9th Cir. 2003)........................................ 6

*Arpin v. Santa Clara Valley Transp. Agency*
261 F.3d 912 (9th Cir. 2001)........................................ 12

*Backlund v. Barnhart*
778 F.2d 1386 (9th Cir. 1985)........................................ 9

*Brosseau v. Haugen*
543 U.S. 194, 125 S.Ct. 596 (2004)........................................ 7

*Burrell, supra*, 423 F.3d at 1124........................................ 8

*Caldwell v. Montoya*
10 Cal.4th 972, 42 Cal.Rptr.2d 842, 897 P.2d 1320 (1995)........................................ 11

*Desrosiers v. Flight International of Florida*
156 F.3d 952 (9th Cir. 1998)........................................ 1

*Elder v. Holloway*
975 F.2d 1388 (9th Cir. 1991)........................................ 7

*Galdieri-Ambrosini v. National Realty & Development Corp.*
136 F.3d 276 (2nd Cir. 1998)........................................ 1

*Gates v. Superior Court*
Cal.App.4th 481, 38 Cal.Rptr.2d 489........................................ 11

*Gibson v. County of Riverside*
181 F.Supp.2d 1057 (C.D. Cal. 2002)........................................ 11

*Gilker v. Baker*
576 F.2d 245 (9th Cir. 1978)........................................ 3

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Glazer v. City of Long Beach*
210 F.Supp.2d 1131 (C.D. Cal. 2000) .......... 6

*Harlow v. Fitzgerald*
457 U.S. 800 (1982) .......... 6

*Holmes v. United States*
879 F. 2d 1037 (2d Cir. 1989) .......... 1

*Humetrix, Inc. v. Gemplus S.C.A.*
268 F.3d 910 (9th Cir. 2001) .......... 1

*Hunter v. Bryant*
112 S.Ct. 534 (1991) .......... 6, 7, 8

*Kinney v. County of Contra Costa,*
(1970) 8 Cal.App.3d 761 .......... 12

*LaLonde v. County of Riverside*
204 F.3d 947 .......... 6

*Malley v. Briggs*
475 U.S. 335 (1986) .......... 6, 7, 8

*McClish v. Nugent*
483 F.3d 1231 .......... 10

*Mitchell v. Forsyth*
472 U.S. 511 (1985) .......... 7

*Morfeld v. Kehm*
803 F.2d 1452 (8th Cir. 1986) .......... 1

*O'Toole v. Superior Court*
140 Cal.App.4th 488, 44 Cal.Rptr.3d 531 (2006) .......... 12

*Payton v. New York*
445 U.S. 573 (1980) .......... 3, 5, 10

*Pearson v. Callahan*
__ U.S. __, 129 S.Ct. 808 (2009) .......... 8, 9, 12

*Reeves v. Sanderson Plumbing Products, Inc.*
530 U.S. 133 (2000) .......... 1, 2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Saucier v. Katz*
533 U.S. 194, 121 S.Ct. 2151 (2001) .......... 7, 8, 9

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*
70 F.3d 1095 (9th Cir. 1995) .......... 8

*United States v. Carrion*
809 F.2d 1120 (5th Cir. 1987) .......... 5, 11

*United States v. Crapser*
472 F.3d 1141 (9th Cir. 2007) .......... 5

*United States v. Gori*
230 F.3d 44, 52 (2d Cir. 2000 .......... 5, 10

*United States v. Hammett*
236 F.3d 1054 (9th Cir. 2001) .......... 5

*United States v. Quaempts*
411 F.3d 1046 (9th Cir. 2005) .......... 6

*United States v. Santana*
427 U.S. 38 (1976) .......... 4, 5, 9

*United States v. Vaneaton*
49 F.3d 1423 (1995), cert. denied, 516 U.S. 1176 (1996) .......... 4, 5, 6, 11

*Venegas v. County of Los Angeles*
153 Cal.App.4th 1230, 63 Cal.Rptr.3d 741 (2007) .......... 11

**STATUTES**

42 United States Code
§ 1983 .......... 2, 3, 6, 11

California Civil Code
§ 52.1 .......... 11, 12

California Penal Code
§ 847 .......... 11

California Government Code
§ 815.2(b) .......... 11

## TABLE OF AUTHORITIES
**(continued)**

**Page**

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ........ *passim*

**COURT RULES**

Federal Rule of Civil Procedure
Rule 7(b) ........ 1
Rule 50 ........ 1
Rule 56 ........ 2

## I. INTRODUCTION

Defendant, California Highway Patrol Officers Adam Voorhees, Brandon Rioux and the State of California Highway Patrol, submit the following motion under Federal Rule of Civil Procedure Rule 50 for consideration and request the Court enter judgment as a matter of law for defendants on plaintiff's claims for 1) violation of civil rights based on an alleged unlawful arrest (Count I) and 2) false imprisonment under state law (Count V) of the Complaint. A motion under Rule 50 can be made in writing or orally during trial. Fed. R. Civ. Proc. Rule 7(b); *Holmes v. United States*, 879 F. 2d 1037, 1042 (2d Cir. 1989).

## II. LEGAL STANDARD APPLICABLE TO MOTION FOR JUDGMENT

Federal Rules of Civil Procedure, Rule 50 allows for a party to make a motion for judgment as a matter of law during trial. The Rule provides:

> (a) Judgment as a Matter of Law.
>
> (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
>
> (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

The motion shall specify the judgment sought and the law and facts upon which the moving party is entitled to judgment. *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 923 (9th Cir. 2001).

A motion for judgment as a matter of law under Rule 50 tests the sufficiency of the evidence offered in support of the other party's claim. Such a motion may be made at the close of a plaintiff's case, (*Desrosiers v. Flight International of Florida*, 156 F.3d 952, 956 (9th Cir. 1998); *Morfeld v. Kehm*, 803 F.2d 1452, 1454 (8th Cir. 1986); *Humetrix*, 923;) or at the close of all the evidence, or at any time prior to submission of the case to the jury. *Desrosiers* at 956; *Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 286 (2nd Cir. 1998).

A Court ruling on a Rule 50 motion must view the evidence in the light most favorable to the nonmoving party and draw all factual inferences in the nonmovant's favor. *Reeves v.*

*Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, allows only one reasonable conclusion. *Id.* (same standard as Rule 56) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251 (1986). In ruling on the motion, the Court may not take into consideration the credibility of the witnesses, resolve evidentiary issues or conflicts, or ponder the weight of the evidence introduced at trial. *Reeves*, 530 U.S. at 150.

## III. ARGUMENT

### A. Plaintiff's Claims

Plaintiff has brought this action pursuant to 42 United States Code § 1983 (Count I- civil rights violation), and state law claims of false imprisonment (Count V) as well as other claims not addressed here.

### B. Summary of Facts

On the morning of May 3, 2007, Officers Rioux and Voorhees were on patrol in Santa Cruz County. At about 8:39 a.m., they received a call from CHP dispatch to proceed to 1200 Graham Hill Road to recover a stolen trailer. Kenneth Pollastrini met the officers in front of 1200 Graham Hill Road and identified himself as the registered owner of the trailer that was parked in the driveway at that location. Mr. Pollastrini had reported the trailer as stolen to the Santa Cruz Police Department on April 28, 2007. Mr. Pollastrini positively identified the trailer as his based on a physical description and the Vehicle Identification Number ("VIN.") In order to investigate the theft of the trailer, Officers Rioux and Voorhees sought to contact the resident of the home at 1200 Graham Hill Road where the trailer was parked.

1200 Graham Hill Road contains a house with an attached 2 car-garage. The property has about 150 feet frontage on Graham Hill Road. The Garage is set back 25 feet from the road and fences extend from each side of the garage to the adjoining property lines. The area between the fences/garage and the road is concrete and asphalt. The stolen trailer was parked parallel to the road to the left of the garage. Officers Rioux and Voorhees went through an unlocked gate to contact the resident of the home in order to investigate the theft of the stolen trailer.

Officer Rioux approached the door to the house and knocked loudly. Officer Rioux knocked several times. After the third time, Sandra Fee opened the door. She was on the telephone at the time she answered the door. According to Ms. Fee, Officer Rioux asked her about the trailer in her driveway and told her the trailer was stolen. Ms. Fee testified that she told Officer Rioux that the trailer was her son's. She also informed him that she lived at the house. Officer Rioux asked Ms. Fee to step outside to answer further questions about the stolen trailer. Rather than comply with Officer Rioux's request that she answer further questions about the stolen trailer, Ms. Fee stated that she wanted to end her telephone call. Ms. Fee, however, did not end her telephone call. Ms. Fee stated that she was on the telephone and would not talk to Officer Rioux until she finished her call. Ms. Fee has admitted that she refused to speak to Officer Rioux until she finished her phone call. While the door was open (Ms. Fee testified that the door was open between a few inches and a "45 degree angle" and that she was partially in front of the door and partially behind the door) Officer Rioux grasped Ms. Fee's right wrist to detain her at the door. Ms. Fee also testified that she was holding the door in her right hand.

**C. False Detention and Arrest Under section 1983**

To prevail on a § 1983 claim, the plaintiff must prove defendants, acting under color of state law, committed an act that deprived her of some right, privilege, or immunity protected by the U.S. Constitution or the laws of the United States. As a civil litigant, plaintiff bears the burden of proving the absence of probable cause. *Gilker v. Baker*, 576 F.2d 245 (9th Cir. 1978). Accordingly, where a plaintiff contends that her rights were violated by a detention, she must present evidence that officers lacked reasonable suspicion to justify detaining her for further questioning. Here, Ms. Fee had the stolen trailer parked in her driveway. Although she claims she informed the officers, that the trailer belonged to her son, her possession of the trailer combined with the officers' knowledge that her explanation was false, created reasonable suspicion and probable cause to believe that she had received or withheld the trailer with knowledge of its being stolen.

The Fourth Amendment prohibits police from making a nonconsensual ***entry*** into a suspect's home in order to effect a warrantless arrest. *See Payton v. New York*, 445 U.S. 573, 576

(1980). However, the Supreme Court has upheld the warrantless arrest of a defendant who was standing in the frame of her doorway because she had voluntarily exposed herself to public view. *United States v. Santana*, 427 U.S. 38, 42 (1976). Likewise, the Ninth Circuit has held that a warrantless arrest is proper when a suspect voluntarily opens the door of his dwelling in response to a noncoercive knock by the police. *See United States v. Vaneaton*, 49 F.3d 1423, 1426 (1995), cert. denied, 516 U.S. 1176 (1996).

In *Vaneaton*, the court summarized the issue as follows:

> The issue Vaneaton raises is whether the police, acting with probable cause but without a warrant and while standing outside his motel room, could lawfully arrest him while he was standing immediately inside the open doorway. Relying on *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and denying the existence of exigent circumstances, Vaneaton claims the answer is clear: The arresting officers were required to have had a warrant.

*Vaneaton*, 49 F.3d at 1425. This is the same issue presented here where Officer Rioux detained and arrested Ms. Fee as she stood in her open doorway. However, in *Vaneaton,* the Ninth Circuit held that "by opening the door as he did, Vaneaton exposed himself in a public place. His warrantless arrest, therefore, does not offend the Fourth Amendment." *Id.* at 1427.

> Knocking on a door to attempt to contact a person inside is a common event and hardly a hallmark of a police state, and indeed, under these facts the zone of privacy sought by *Payton* [445 U.S. 573] to be protected is not implicated. Accordingly, we hold that *Payton* was not violated, and that Vaneaton's arrest was proper.

*Id.* *Vaneaton* follows established Ninth Circuit authority and the United States Supreme Court's decision in *Santana, supra*, 427 U.S. 38:

> In *Whitten* [*United States v. Whitten*, 706 F.2d 1000, 1015-17 (9th Cir. 1983)], we held that Gaiefsky's arrest while standing in the doorway of his hotel room did not violate *Payton* because "[a] doorway ..., unlike the interior of a hotel room, is a public place." 706 F.2d at 1015. As authority for this proposition, we relied on *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

*Vaneaton*, 49 F.3d at 1426. In *Vaneaton*, the Ninth Circuit specifically rejected the notion that reasonableness of the arrest could be decided "on the basis of whether Vaneaton was standing inside or outside the threshold of his room." *Id.*

The Ninth Circuit has extended *Vaneaton* to seizures amounting to detentions rather than arrests (i.e., *Terry*-stops) occurring at the open door of a residence.

> [W]e now hold that when a suspect voluntarily opens the door of his residence in response to a non-coercive 'knock and talk' request, the police may temporarily seize the suspect outside the home (or at the threshold) provided that they have reasonable suspicion of criminal activity.

*United States v. Crapser*, 472 F.3d 1141, 1148 (9th Cir. 2007). Other circuits also follow *Santana* and *Vaneaton* in recognizing that an arrest or detention of an individual at an open door, without a warrant, does not violate the Fourth Amendment. See *United States v. Carrion*, 809 F.2d 1120, 1128 (5th Cir. 1987); *United States v. Gori*, 230 F.3d 44, 53 (2nd Cir. 2000).

The fact that plaintiff's arrest here occurred at what she characterizes as her "back door" is not a relevant distinction. It is well established that: "Law enforcement officers may encroach upon the curtilage of a home for the purpose of asking questions of the occupants." *United States v. Hammett*, 236 F.3d 1054, 1059 (9th Cir. 2001).

As with *Vaneaton* and *Crapser,* the expectation of privacy ends when the door is opened in response to a non-coercive knock. *Vaneaton*, 49 F.3d at 1426-1427; *Crapser*, 472 F.3d at 1148. Whether the door is at the front, the side or back of the house, the person opening the door has chosen to expose herself to whoever is on the other side of the door. "She was not merely visible to the public but was as exposed to public view, speech, hearing, and **touch** as if she had been standing completely outside her house." *Santana, supra*, 427 U.S. at 42, emphasis added. "He voluntarily exposed himself to warrantless arrest by freely opening the door of his motel room to the police." *Vaneaton,* 49 F.3d at 1426. Here, Ms. Fee, with a stolen trailer parked in her driveway, heard the knock on her door, observed and recognized Officer Rioux as a California Highway Patrol Officer. She voluntarily opened her door and spoke to Officer Rioux. Accordingly, her arrest at the open doorway did not violate the Fourth Amendment.

The Ninth Circuit, in *Vaneaton*, explained the distinction between the facts of *Payton v. New York*, 445 U.S. 573 (1980), and the facts in *Vaneaton* and here which followed from the Supreme Court's decision in *Santana*:

> [T]he arrest in the instant case involves factors that distinguish it from the arrests made in Payton and its consolidated companion case, *Riddick v. New York*. In *Payton*, the police who entered Payton's apartment **broke through a closed door with crowbars**. No one was home, but incriminating evidence seen in plain view was seized and used to convict him. 445 U.S. at 576-77, 100 S.Ct. at 1374-75. In *Riddick*,

> the closed door of Riddick's house on which the police knocked was opened by Riddick's young son. Riddick could be seen **sitting inside the apartment on a bed. He was covered by a sheet**. Without any behavior on Riddick's part that could be construed as consent, the police entered and arrested him on the spot. 445 U.S. at 578, 100 S.Ct. at 1376. In both cases, the entries preceded the arrests.

49 F.3d at 1426.

In *LaLonde v. County of Riverside*, 204 F.3d 947, 951, the officer clubbed the plaintiff's female roommate with a flashlight then forced his way into the apartment before he arrested plaintiff. Thus, there was no detention or arrest at the threshold. In *United States v. Quaempts*, 411 F.3d 1046, 1047-48 (9th Cir. 2005) the criminal defendant lived in a small trailer home and was arrested after the officer entered the trailer while he was lying in his bed. In *Anderson v. Long Beach City*, 81 Fed.Appx. 703, 706 (9th Cir. 2003), the undisputed facts were that the arrest did not happen until the officer had completely entered plaintiff's home. In *Glazer v. City of Long Beach*, 210 F.Supp.2d 1131, 1134, 1137 (C.D. Cal. 2000), the district court denied summary judgment to defendants because under plaintiff's version of facts the officer came a "few feet into a citizen's home to effect an arrest." None of these cases involved an arrest at the threshold where an officer standing outside detains or arrests a person who is inside, but at the open threshold.

### D. Officers Rioux and Voorhees are Entitled To Qualified Immunity from Plaintiff's Claim That Her Civil Rights Were Violated by the Warrantless Arrest at the Threshold of Her Home.

Law enforcement officers are entitled to assert a defense of qualified or "good faith" immunity from section 1983 liability if they reasonably, although mistakenly, believed that their actions were constitutional. *Hunter v. Bryant*, 112 S.Ct. 534 (1991); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding state officer protected from liability if "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

Qualified immunity shields an officer from liability when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he

confronted. *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151 (2001), (qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force'"). As the Supreme Court more recently stated:

> Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

*Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596 (2004).

The question of whether a reasonable officer could have believed that the defendant officers' conduct was proper under established law is generally a **question of law** for the trial court that should ordinarily be determined at the earliest possible point in the litigation. *Hunter v. Bryant*, 112 S.Ct. at 536; *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872-873 (9th Cir. 1993).

In order to defeat a defense of qualified immunity, a plaintiff must show that the officer's actions violated "clearly established" law at the time the actions were taken. *Malley v. Briggs*, 475 U.S. at 345; *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985); *Anderson v. Creighton* 483 U.S. at 640. In showing that the officer violated "clearly established" law, the plaintiffs must do more than simply allege the violation of a generalized, abstract right (e.g., the Fourth Amendment right to be free from unreasonable seizures). *Id*. at 639. They must identify the specific constitutional right allegedly infringed, as defined by "clearly established" law at the time of the incident. They bear the burden of identifying "the universe of statutory or decisional law from which the court can determine whether the right allegedly violated was clearly established." *Elder v. Holloway*, 975 F.2d 1388, 1392 (9th Cir. 1991). Thus, the plaintiff must show that the **particular facts** of her case support a claim of clearly established right. *Id*. at 1392-1393, emphasis added. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, *supra*, 533 U.S. at 201.

The Supreme Court held in *Anderson* that whether a search is "unreasonable" within the meaning of the Fourth Amendment is an entirely different question from whether an officer reasonably could have believed his actions to be lawful under the Fourth Amendment. *Anderson v. Creighton*, 483 U.S. at 643-44. The court makes two inquiries to determine whether the

defense of qualified immunity is applicable. First, the court identifies the constitutional right which was allegedly violated. Second, the court determines whether the law governing the official's conduct is sufficiently clearly established to alert a reasonable officer to its constitutional parameters. *Saucier v. Katz, supra*, 533 U.S. at 201; *Act Up!/Portland, supra*, 988 F.2d at 871.

Recently, the Supreme Court has held that lower courts may now resolve the issue of qualified immunity by deciding whether the law governing the official's conduct was clearly established at the time of the conduct, without first deciding whether the conduct, in fact, violated plaintiff's rights. *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 818-822 (2009). This case is particularly amenable to resolution of qualified immunity without first answering the question of whether plaintiff's rights were violated by her threshold arrest. In terms of qualified immunity, the relevant question is whether it was clear to a reasonably trained and knowledgeable officer on May 3, 2007, that he could not reach into an open doorway to detain and arrest a felony suspect. Although as stated above, it appears clear that there was no constitutional violation, any contrary authority merely establishes that the law is unclear.

In assessing whether the law is clearly established such that an officer could not reasonably believe that his conduct was lawful, "the court should ask whether the [officer] acted reasonably under settled law in the circumstances, **not whether another reasonable, or more reasonable interpretation of the events can be constructed ... after the fact.**" *Hunter*, 502 U.S. at 228 (emphasis added). "[T]he issue is whether a reasonable officer could have believed that his conduct was justified. 'This is so notwithstanding that reasonable officers could disagree on that issue.'" *Burrell v McIlroy*, 423 F.3d 1121, 1124 (9th Cir. 2005). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter*, 502 U.S. at 227, quoting *Malley v. Briggs*, 475 U.S. at 343, 341; *Anderson v. Creighton*, 483 U.S. at 638; *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).

/ / /

/ / /

In *Saucier v. Katz*, the Supreme Court clarified the distinction between the objectively reasonable standard applicable to the excessive force claim and the reasonable mistake inquiry for purposes of evaluating qualified immunity.

> The qualified immunity inquiry, on the other hand, has a further dimension. The concern of the immunity inquiry is to acknowledge that **reasonable mistakes** can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier*, 533 U.S. at 205. The rationale can be applied here to whether the detention and arrest of plaintiff at the open door of her home was proper. Although it is clear that Ninth Circuit precedents, following *United States v. Santana*, *supra*, 427 U.S. 38 establish that a law enforcement officer can arrest a suspect (with probable cause) or detain a person (based on reasonable suspicion) at the open door of a home, as discussed above, contrary authority that exists, merely demonstrates that, at most, the law is unsettled. If the law is unsettled an officer is entitled to immunity.

> The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law. Police officers are entitled to rely on existing lower court cases without facing personal liability for their actions. In *Wilson* [*v. Layne*, 526 U.S. 603, 119 S.Ct. 1692] we explained that a Circuit split on the relevant issue had developed after the events that gave rise to suit and concluded that "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." 526 U.S., at 618, 119 S.Ct. 1692.

*Pearson*, *supra*, __ U.S. __, 129 S.Ct at 823. The plaintiff bears the burden of demonstrating the constitutional right at issue was clearly established at the time of the alleged violation. See *Backlund v. Barnhart*, 778 F.2d 1386, 1389 (9th Cir. 1985).

On April 11, 2007, three weeks before plaintiff's arrest here, the United States Court of Appeals, Eleventh Circuit, published a decision with facts (according to the plaintiff there) similar to those presented here:

> McClish [plaintiff], in contrast, said that he had just gotten out of the shower when he heard a dog barking followed by a knock at the door. He put on a bathrobe, went to the door, and opened it. McClish averred that Deputy Terry was standing on the

> porch, directly in front of the open door, and that Terry then **reached into the house, grabbed him, and forcibly pulled him out onto the porch**. Both Holmberg [who shared the home] and McClish unambiguously stated that McClish had been standing completely inside the home at the time.

*McClish v. Nugent*, 483 F.3d 1231, 1235-1236, emphasis added, footnotes omitted (11th Cir. 2007). In *McClish*, the Eleventh Circuit held that the deputy sheriff's act of reaching into Mr. McClish's home across the threshold of the open door to arrest McClish without a warrant violated the Fourth Amendment under the reasoning of *Payton*, *supra*,445 U.S. at 589-590. *McClish*, 483 F.3d at 1241-1242. Nevertheless, the Eleventh Circuit held that the defendant law enforcement officers were entitled to qualified immunity.

> No Supreme Court, Eleventh Circuit, or Supreme Court of Florida cases have resolved the question whether *Payton* or *Santana* applies to the arrest of a person who, while standing **firmly inside the house**, opens the door in response to a knock from the police and is then pulled outside the unambiguous physical dimensions of the home. However, **the law of other circuits might have permitted an arrest under facts similar to those presented here. *See, e.g.*, *United States v. Vaneaton*, 49 F.3d 1423, 1426-27 (9th Cir. 1995)**; *United States v. Carrion*, 809 F.2d 1120, 1127-28 (5th Cir. 1987). These decisions from other circuits are not, of course, determinative of whether existing law in this Circuit was clearly established. Instead, they are simply further support for our conclusion: that in light of the apparent tension between *Santana* and *Payton*, we have no basis upon which to conclude that a reasonable law enforcement officer fairly would have known that the arrest alleged by McClish, **within the house yet within reach of an officer standing outside**, was unlawful.

*Id*. at 1249 (emphasis added). The dissenting judge in *McClish*, while agreeing that the deputy was entitled to immunity, heavily criticized the majority for inventing a "plane-of-the door rule" that was illogical, inconsistent with Supreme Court precedent and well reasoned decisions of other circuits. *Id*. at 1258-1259 (in dissent). The dissenting judge emphasized that:

> Not only has *Santana* never been overruled or even questioned by the Supreme Court, and not only is it in harmony with the rationale of the *Payton* decision: it is also more consistent with Fourth Amendment jurisprudence in general than the majority opinion's approach. The majority opinion reads *Payton* to support a bright-line rule at the property-law plane of the opened door. But bright-line rules are generally disfavored under the Fourth Amendment's global command of "reasonableness."

*Id*. at 1258 (in dissent). The dissenting opinion also agreed that in the Ninth, Second and Fifth Circuits the deputy's conduct – reaching in to detain or arrest a suspect, would not violate the Fourth Amendment. *Id.* at 1262 (Citing *inter alia*, *United States v. Gori*, 230 F.3d 44, 52 (2d Cir.

2000); *United States v. Vaneaton*, 49 F.3d 1423, 1427 (9th Cir. 1995); *United States v. Carrion*, 809 F.2d 1120, 1128 (5th Cir. 1987)).

In this case, plaintiff Sandra Fee had a stolen trailer parked in her driveway. A reasonable officer would have grounds to detain or arrest the person who stated she lived at the house with the stolen trailer and had apparent control over the stolen property. As there is no authority that establishes that a detention accomplished by reaching across an open doorway would violate the Fourth Amendment, Officer Rioux and Officer Voorhees are entitled to qualified immunity from plaintiff's false arrest claim brought under 42 U.S.C. section 1983.

**E. Officers Rioux and Voorhees are Immune from Liability on Plaintiff's State-Law Claim of False Arrest/False Imprisonment.**

In *Venegas v. County of Los Angeles*, 153 Cal.App.4th 1230, 1244-47, 63 Cal.Rptr.3d 741 (2007), a California State appellate court held that public officers have no **common law** qualified immunity from liability under the Bane Act (Cal Civ. Code § 52.1). Nevertheless, law enforcement officers and their employers retain all applicable statutory immunity from claims arising under state law. *Venegas*, 153 Cal.App.4th at 1246 (immunity based on Cal. Penal Code § 847). Under California law "[i]t is generally recognized that a statutory governmental immunity overrides a statute imposing liability." *Gates v. Superior Court*, Cal.App.4th 481, 510, 38 Cal.Rptr.2d 489 (19959; see *Caldwell v. Montoya*, 10 Cal.4th 972, 986, 42 Cal.Rptr.2d 842, 897 P.2d 1320 (1995); *Gibson v. County of Riverside*, 181 F.Supp.2d 1057, 1085-1086 (C.D. Cal. 2002).

California Penal Code section 847 provides that "[t]here shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer ... acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest" where "[t]he arrest was lawful, **or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful**." Pursuant to California Government Code section 815.2, subdivision (b): "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Although Penal Code section 847 is usually invoked to immunize law

enforcement where an arrest is made with probable cause, its application is broader. See *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 920 (9th Cir. 2001); *Kinney v. County of Contra Costa*, 8 Cal.App.3d 761, 767-769 (1970).

In a claim for false arrest or imprisonment, the statutory immunity is based on the same "reasonable belief" in the lawfulness of the action that is recognized under qualified immunity. "The principles of qualified immunity shield an officer from personal liability when an officer **reasonably believes** that his or her conduct complies with the law." *Pearson, supra,* __ U.S. __, 129 S.Ct at 823. Again, as there is no clearly established law to the contrary, reasonable officers would reasonably believe that detention and/or arrest supported by reasonable suspicion or probable cause could be accomplished by reaching across an open doorway. Accordingly, Officer Rioux and Officer Voorhees are immune from liability under plaintiff's state law false arrest/imprisonment claim as is the State of California Highway Patrol. Additionally, to the extent that plaintiff alleges a Bane Act violation on her detention and arrest (as distinct from the claim of excessive force) defendants are also immune from liability. "On our examination of Civil Code section 52.1, we have found no indication the Legislature intended to create an exception to the general rule [of immunity]. Civil Code section 52.1 contains no indicia reflecting an intent that public employees may be sued despite a statutory immunity that would otherwise apply**."** *O'Toole v. Superior Court*, 140 Cal.App.4th 488, 504, 44 Cal.Rptr.3d 531 (2006).

## IV. CONCLUSION

Officer Rioux and Officer Voorhees had reasonable suspicion concerning plaintiff's involvement in a crime associated with the stolen trailer parked in her driveway and probable cause that she had committed a felony associated with the theft of the trailer. Under principles of qualified immunity and statutory immunity under state law, Officer Rioux, Officer Voorhees and the State of California cannot be liable to plaintiff under any theory based on false detention, false arrest or false imprisonment. Accordingly, defendants are entitled to judgment as a matter of law on those claims.

/ / /

/ / /

Dated: May 19, 2010

Respectfully Submitted,

EDMUND G. BROWN JR.
Attorney General of California
TYLER B. PON
Supervising Deputy Attorney General

_/s/ Jeff R. Vincent____
JEFF R. VINCENT
Deputy Attorney General
*Attorneys for Defendants*

OK2008900086
90148019.doc