```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                      SAN JOSE DIVISION
 4
 5
     SANDRA FEE,                    )  C-08-01549 RMW
 6                                  )
               PLAINTIFF,           )  SAN JOSE, CALIFORNIA
 7                                  )
            VS.                     )  MAY 25, 2010
 8                                  )
     STATE OF CALIFORNIA,           )  VOLUME 5
 9   CALIFORNIA HIGHWAY             )
     PATROL, OFFICER B. RIOUX,      )  PAGES 729-733
10   OFFICER VOORHEES,              )        917-924
                                    )
11              DEFENDANTS.         )
                                    )
12
13
             PARTIAL TRANSCRIPT OF PROCEEDINGS
14         BEFORE THE HONORABLE RONALD M. WHYTE
              UNITED STATES DISTRICT JUDGE
15
16   A P P E A R A N C E S:
17   FOR THE PLAINTIFF:   ATCHISON, BARISONE,
                          CONDOTTI & KOVACEVICH
18                        BY:  GEORGE J. KOVACEVICH
                          333 CHURCH STREET
19                        SANTA CRUZ, CALIFORNIA  95060
20
21   FOR THE DEFENDANT:   OFFICE OF THE ATTORNEY GENERAL
                          BY:  JEFFREY RICHARD VINCENT
22                        1515 CLAY STREET, 20TH FLOOR
                          OAKLAND, CALIFORNIA  94612
23
24   OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                          CERTIFICATE NUMBER 9595
25
```

```
 1    SAN JOSE, CALIFORNIA                    MAY 25, 2010
 2                       P R O C E E D I N G S
 3              (WHEREUPON, THE FOLLOWING PROCEEDINGS
 4    WERE HELD OUT OF THE PRESENCE OF THE JURY:)
 5              THE COURT:  I UNDERSTOOD THAT,
 6    MR. KOVACEVICH, YOU HAD SOMETHING YOU WANTED TO
 7    BRING UP QUICKLY.
 8              MR. KOVACEVICH:  I DO, YOUR HONOR.  THANK
 9    YOU AND GOOD MORNING.
10              I WANTED TO RAISE AN ISSUE OF THE
11    TESTIMONY OF MR. VOLK, WHO IS THE ECONOMIST FOR
12    MR. VINCENT AND HIS CLIENT.
13              I RECEIVED A COPY OF HIS REPORT WHEN THE
14    DISCLOSURES WERE MADE, AND I DON'T THINK ANYTHING
15    HE'S GOING TO TESTIFY TO HERE, THAT HE INDICATES
16    HERE IS REALLY WITHIN HIS EXPERTISE, AND SO I WANT
17    TO BRING THAT TO THE COURT'S ATTENTION.
18              HE SAYS THAT HE FINDS NO ECONOMIC LOSS,
19    AND THESE ARE HIS REASONS:  MS. FEE'S ACTIVITIES
20    INDICATE NO ECONOMIC LOSS; SHE CONTINUED TO WORK
21    AFTER THE INCIDENT IN QUESTION; HER EMPLOYMENT
22    ENDED AS A RESULT OF ECONOMIC CIRCUMSTANCES AT HER
23    PLACE OF EMPLOYMENT; IN FACT, HER EMPLOYER CLOSED
24    THEIR OFFICE.
25              SO SO FAR WHAT I'M GETTING AT IS THIS
```

1 DOESN'T HAVE ANYTHING TO DO WITH -- I MEAN,
2 THAT'S -- THE JURY CAN DRAW THOSE CONCLUSIONS FROM
3 THE FACTS.
4       HE'S TESTIFYING ON SOMETHING THAT'S NOT
5 WITHIN HIS EXPERTISE AS AN ECONOMIST.  HE'S JUST
6 OPINING ON THE ISSUES OF FACT THAT THE JURY IS
7 GOING TO DRAW INFERENCES FROM.
8       HE GOES ON AND SAYS SUBSEQUENT TO THE END
9 OF HER EMPLOYMENT, MS. FEE'S DEPOSITION TESTIMONY,
10 PER HER DEPOSITION TESTIMONY, MS. FEE RECEIVED
11 UNEMPLOYMENT BENEFITS AND LOOKED FOR WORK.
12       IN ORDER TO BE ELIGIBLE TO RECEIVE
13 UNEMPLOYMENT BENEFITS, ONE HAS TO BE PHYSICALLY
14 ABLE TO WORK, READY AND WILLING TO IMMEDIATELY
15 ACCEPT WORK AND ACTIVELY ENGAGE IN SEEKING
16 EMPLOYMENT.
17       BASED ON HER TESTIMONY AND UNEMPLOYMENT
18 BENEFITS ELIGIBILITY REQUIREMENTS, SHE WAS WILLING
19 AND ABLE TO WORK FOLLOWING THE INCIDENT IN
20 QUESTION.
21       PROLONGED UNEMPLOYMENT WOULD NOT BE
22 SURPRISING FOR INDIVIDUALS WORKING IN THE MORTGAGE
23 INDUSTRY FOR THE PERIODS AT ISSUE.
24       MOREOVER, FROM A MEDICAL AND PSYCHIATRIC
25 PERSPECTIVE, DR. KERAM'S REPORT INDICATES HER

1  SYMPTOMS WOULD NOT BE EXPECTED TO CAUSE HER TO BE
2  DISABLED FROM WORK.  BASED ON THE ABOVE, NO
3  ECONOMIC LOSS IS INDICATED.
4           I JUST DON'T THINK THAT'S REALLY WITHIN
5  HIS --
6           THE COURT:  WHY WASN'T THIS BROUGHT UP
7  SOME TIME AGO?
8           MR. KOVACEVICH:  WELL, BECAUSE I DIDN'T
9  THINK HE WAS GOING TO ACTUALLY CALL HIM BECAUSE, I
10 MEAN, ALL HE -- I DIDN'T EVEN DEPOSE HIM BECAUSE HE
11 SAID THERE'S NO ECONOMIC LOSS.
12          THE COURT:  WHAT'S YOUR SCHEDULE OF
13 WITNESSES TODAY?
14          MR. VINCENT:  MY SCHEDULE OF WITNESSES
15 TODAY IS DR. MILTON HARRIS, DR. EMILY KERAM, AND
16 THE COMPLETION OF OFFICER VOORHEES.
17          MR. VOLK IS SCHEDULED TO TESTIFY
18 TOMORROW.
19          THE COURT:  OKAY.  WELL, THAT'S --
20          MR. VINCENT:  AND I'D LIKE TO ADDRESS THE
21 POINTS.
22          THE COURT:  YEAH, LET'S DO IT, BUT LET'S
23 NOT HOLD THE JURY UP.
24          MR. VINCENT:  OKAY.  WE CAN DO THAT AFTER
25 TODAY?

```
1                THE COURT:  YES, WE'LL DO IT SOMETIME
2    TODAY.
3                MR. VINCENT:  OKAY.
4                MR. KOVACEVICH:  YOUR HONOR, CAN I GIVE
5    YOU A COPY OF THIS REPORT JUST SO YOU HAVE A COPY
6    OF THAT TO LOOK AT IN THE INTERIM WHENEVER YOU HAVE
7    A CHANCE TO?
8                THE COURT:  SURE.
9                MR. KOVACEVICH:  MAY I APPROACH?
10               THE COURT:  YES.
11   ///
12   ///
```

1   ///

2   ///

3           THE COURT:  YOU'RE FREE TO STEP DOWN.

4           THE WITNESS:  THANK YOU.  I THINK SOME OF

5   DR. HARRIS'S PAPERS ARE UP HERE, TOO.

6           MR. VINCENT:  OH, DID HE LEAVE STUFF?

7           THE WITNESS:  YES.

8           THE COURT:  OKAY.  LET'S TALK ABOUT

9   MR. KOVACEVICH'S CONCERN WITH MR. VOLK.

10          MR. VINCENT, YOU WANTED TO BE HEARD WITH

11  RESPECT TO PLAINTIFF'S OBJECTION TO MR. VOLK.

12          FRANKLY, LOOKING AT HIS REPORT, I HAVE

13  TROUBLE SEEING WHAT HIS EXPERTISE IS.

14          MR. VINCENT:  WELL, YOUR HONOR, MR. VOLK

15  IS PARTLY GOING TO BE REBUTTING THE TESTIMONY OF

16  MR. HARRY.

17          MR. HARRY DIDN'T -- MADE VARIOUS

18  UNFOUNDED ASSUMPTIONS ABOUT THE JOB MARKET AND THE

19  POTENTIAL FOR MS. FEE TO OBTAIN A CERTAIN SALARY

20  AND HER JOB PROSPECTS, AND PART OF MR. VOLK'S

21  TESTIMONY IS GOING TO BE TO ADDRESS THOSE.

22          THE COURT:  WAS HIS DEPOSITION TAKEN?

23          MR. VINCENT:  NO, IT WAS NOT.

24          THE COURT:  BECAUSE IT SEEMS TO ME, IF

25  YOU LOOK AT HIS REPORT, THE ONLY THING THAT I THINK

1   DOES POTENTIALLY INVOLVE EXPERT TESTIMONY WOULD BE
2   HIS -- LET ME FIND IT -- PROLONGED UNEMPLOYMENT
3   WOULD NOT BE SURPRISING FOR INDIVIDUALS WORKING IN
4   THE MORTGAGE INDUSTRY IN THE PERIODS AT ISSUE.
5              IT WOULD SEEM TO ME THAT IF HE HAD
6   INFORMATION ABOUT JOBS AVAILABLE IN THAT INDUSTRY
7   AND HOW THEY CHANGED, THAT WOULD BE THE TYPE OF
8   ECONOMIC TESTIMONY THAT WOULD BE --
9              MR. VINCENT: EXACTLY.  I MEAN, HE'S
10  LOOKED AT THE JOB MARKET AND --
11             THE COURT: BUT THERE'S NOTHING IN THIS
12  REPORT THAT GIVES A BASIS FOR THAT OPINION.
13             MR. VINCENT: WELL, AGAIN, AS I SAID,
14  HE'S ALSO BEING OFFERED TO REBUT THE ASSUMPTIONS,
15  THE FACTUAL -- THE ERRONEOUS FACTUAL ASSUMPTIONS
16  MADE BY MR. HARRY IN OFFERING HIS OPINIONS OF THE
17  HALF MILLION DOLLARS OF THE LOSS OF INCOME.
18             YOU KNOW, THIS IS A WOMAN WHOSE LOSS, IN
19  PART, IS BASED ON FACT THAT SHE CONTINUED TO
20  COLLECT UNEMPLOYMENT BENEFITS UP UNTIL 2009.
21             THE COURT: WELL, THAT'S IN EVIDENCE AND
22  SOMETHING YOU COULD ARGUE.
23             MR. HARRY, I THINK A COUPLE OF TIMES,
24  STATED THAT HE JUST DID NUMBERS BASED UPON
25  ASSUMPTIONS, AND IF THOSE ASSUMPTIONS WERE NOT

1  CORRECT, THEN HIS CALCULATIONS WERE NOT CORRECT.
2             MR. VINCENT: RIGHT.  AND THAT'S THE
3  PURPOSE OF MR. VOLK IS TO EXPLAIN WHY THOSE
4  ASSUMPTIONS ARE NOT CORRECT.
5             THE COURT: BUT THAT HAS NOTHING TO DO
6  WITH ECONOMICS.  IT HAS TO DO WITH THE FACTS OF THE
7  CASE.
8             MR. VINCENT: WELL, IT DOES HAVE TO DO
9  WITH ECONOMICS.  IT HAS TO DO WITH THE JOB MARKET.
10 THAT'S PART OF THE ECONOMICS.
11            THE COURT: WHAT'S HE GOING TO SAY ABOUT
12 THE JOB MARKET?
13            MR. VINCENT: HE'S GOING TO SAY THAT IT'S
14 NOT THAT GOOD.  IT DOESN'T -- SHE DOESN'T HAVE THE
15 LICENSURE, THE QUALIFICATIONS THAT ARE IN DEMAND IN
16 THE INDUSTRY.
17            THE COURT: BUT IS HE GOING TO HAVE
18 FACTUAL INFORMATION ABOUT THE MORTGAGE INDUSTRY?
19            MR. VINCENT: THAT'S MY UNDERSTANDING.  I
20 MEAN, I'VE TALKED TO HIM LAST WEEK, SO --
21            THE COURT: WHY ISN'T IT IN HIS REPORT,
22 THEN?
23            MR. VINCENT: WELL, HE DIDN'T HAVE THAT
24 INFORMATION AT THE TIME BECAUSE HE DIDN'T HAVE
25 MR. HARRY'S AND MR. NELSON'S REPORTS AT THE TIME

1   HIS REPORT WAS PREPARED.

2           HIS REPORT WAS PREPARED BASED ON WHAT

3   HE -- ON THE INFORMATION HE HAD AT THAT TIME, WHICH

4   WAS BASED ON DR. KERAM'S EVALUATION.

5           THE COURT:  MR. KOVACEVICH?

6           MR. KOVACEVICH:  WELL, I DON'T QUITE

7   UNDERSTAND THAT, BECAUSE WHETHER HE HAD THE

8   INFORMATION FROM MY PEOPLE'S REPORT -- I MEAN, IF

9   YOU'RE GOING TO BECOME AN EXPERT, YOU BECOME AN

10  EXPERT ON YOUR OWN INITIATIVE OR YOUR CLIENT'S

11  INITIATIVE, AND THEN YOU PUT IN THE INFORMATION

12  THAT IS GOING TO SUPPORT YOUR OPINION.

13          AND I WOULD EVEN QUESTION BEYOND THAT AS

14  TO WHETHER HE'S QUALIFIED TO DO THAT KIND OF

15  ANALYSIS.

16          I MEAN, I CAN DO THAT KIND OF ANALYSIS.

17  I MEAN, I CAN CALL MORTGAGE BROKERAGE -- I CAN GO

18  ON-LINE AND THEN I CAN COME IN HERE AND TELL YOU

19  THAT I'M AN EXPERT IN THAT?  I DON'T THINK SO.  I'M

20  AN EXPERT IN LAW.

21          HE'S AN EXPERT IN ACCOUNTING AND

22  FINANCES, BUT NOT IN JOB MARKETS.

23          AND I WILL SAY THAT -- I MEAN, YOU SEEM

24  TO REFLECT MY REACTION WHEN I READ THAT REPORT.

25  THAT'S WHY I DIDN'T DEPOSE HIM.  I MEAN, I -- IT'S

1    JUST LIKE, OKAY, YOU KNOW WELL --
2              THE COURT: THE CRITICISM I HAVE OF YOU,
3    THOUGH, IS WHY DIDN'T YOU BRING THIS UP PRETRIAL?
4    I MEAN, THIS IS THE CLASSIC TYPE OF THING THAT
5    SHOULD BE BROUGHT IN AN IN LIMINE MOTION.
6              MR. KOVACEVICH: I TELL YOU, YOUR HONOR,
7    I'M SORRY AND I APOLOGIZE. I REALLY -- I MEAN, I
8    KNOW HE DISCLOSED HIM. HE DISCLOSED OTHER PEOPLE.
9              BUT I JUST DIDN'T THINK THERE WAS ANY WAY
10   THIS GUY WAS -- HE WAS EVER GOING TO CALL HIM, AND
11   I JUST MAYBE ASSUMED TOO MUCH.
12             I MEAN, YOU KNOW, IF I HAD DONE A PIECE
13   OF PAPER, YOU KNOW, A LITTLE BIT EARLIER, I MEAN,
14   I -- IS THERE A PREJUDICE HERE? I MEAN, I THINK
15   THE ISSUE IS REALLY, IS THIS WARRANTED?
16             THE COURT: WELL, LET ME LEAVE IT THIS
17   WAY. I DON'T SEE IT BASED ON THIS REPORT.
18             IF, MR. VINCENT, YOU WANT TO GIVE ME AN
19   OFFER OF PROOF THAT WOULD SHOW WHY HE'S QUALIFIED
20   TO EXPRESS AN OPINION ON JOBS AVAILABLE IN HER
21   MARKET, OR IN THE TYPE OF MARKET THAT SHE WOULD BE
22   LOOKING FOR WORK IN, AND WHAT HIS OPINION IS AND
23   THE BASIS OF IT, I'LL CONSIDER IT.
24             BUT THIS IS NOT AN EXPERT REPORT THAT I
25   THINK JUSTIFIES ALLOWING HIM TO TESTIFY.

1         MR. VINCENT:  WELL, AS I SAID, I -- HE'S
2    BEING CALLED TO REBUT THE ASSUMPTIONS MADE BY
3    ANOTHER EXPERT, AND THAT'S -- THAT'S BEYOND THE
4    SCOPE OF HIS REPORT AND BEYOND THE DISCLOSURE
5    BECAUSE IT'S FOR PURPOSES OF REBUTTAL.
6         THE COURT:  BUT --
7         MR. VINCENT:  WE'VE LEFT THE JURY WITH
8    THE IMPRESSION THAT MR. HARRY DID THESE
9    CALCULATIONS BASED ON FACTS THAT SIMPLY DON'T
10   EXIST.
11        THE COURT:  WELL, THEY ARE FACTS -- IF
12   THEY DON'T EXIST, YOU CAN POINT THAT OUT IF -- YOU
13   CAN ALSO POINT OUT THAT MR. HARRY SPECIFICALLY SAID
14   THAT HIS TESTIMONY WAS BASED ON ASSUMPTIONS AS TO
15   CERTAIN FACTS, AND IF THOSE FACTS WEREN'T TRUE,
16   THEN HIS OPINION IS NOT -- HAS TO BE MODIFIED.
17        I MEAN, I THINK THAT'S PRETTY CLEAR IN
18   HIS TESTIMONY.
19        MR. VINCENT:  OKAY.
20        THE COURT:  OKAY.
21        MR. KOVACEVICH:  THANK YOU.
22        MR. VINCENT:  THANK YOU.
23        THE COURT:  JUST LET ME CONFIRM, YOU
24   DON'T DISAGREE, MR. KOVACEVICH, THAT HE SAID THAT
25   IF HIS ASSUMPTIONS WERE WRONG, THAT HIS FIGURES

```
1    WOULD NEED TO BE CHANGED.
2              MR. KOVACEVICH:  NO.  HE WAS VERY DIRECT
3    ABOUT THAT.
4              THE COURT:  OKAY.  THANK YOU.
5              MR. VINCENT:  THANK YOU, YOUR HONOR.
6              (WHEREUPON, THE EVENING RECESS WAS
7    TAKEN.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

/S/
_____
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595